# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

## PACER Cover Sheet
## for Electronically Filed Documents

Any data shown here are current as of  06/10/06  . Any element of information on this form, except the received date, is subject to change as changes may be made to the Court's official docket.

**Case Title:** Paulo Rigg and Jodie L. Rigg

**Case Number:** 05-10673

### Document Information

**Description:** Minutes of Hearing Held On 9/2/05 Re: [4-1] Chapter 13 Plan . Notes of Oral Ruling Attached.

**Received on:** 2005-09-02 14:30:41.000

**Date Filed:** 2005-09-02 00:00:00.000

**Date Entered On Docket:** 2005-09-02 00:00:00.000

### Filer Information

**Submitted By:** James Burke

**If this form is attached to the document identified above, it serves as an endorsed copy of the document as it existed on the above date.  To confirm that nothing has changed since then, review the docket.**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

**Clerk's Minutes**

Before the Honorable James Starzynski

James Burke, Law Clerk
Jill Peterson, Courtroom Deputy

**\*\*Hearing was Digitally Recorded**

**Date:**
**SEPTEMBER 2, 2005**

**In Re: Paulo Rigg and**
**Jodie Rigg**                                                    **Case 13-05-10673 SA**

**Oral ruling on confirmation**

**Debtors: Ron Holmes**
**Trustee: A. DeBois**

_____

**TIME STARTED:**      11:04          **TIME ENDED:**     11:36

**Summary of Proceedings:**                                Exhibits _____

                                                           Testimony _____

    Confirmation denied.
    Debtors to file preconfirmation modification.

    NOTES OF ORAL RULING ATTACHED.

RIGG          05-10673      September 2, 2005
Ruling on Confirmation of Plan

1334 and 157; core; 7052

Allow a preconfirmation modification of the plan and filing amended schedules I and J and noticing out the preconfirmation modification of the plan ("amended plan").

This is a six-person family; the children are 12, 10, 8 and 6. Ms. Rigg is no longer employed outside the home; Mr. Rigg is employed at Los Alamos and has take-home pay of $6885 per month. Schedules I and J filed with the petition showed disposable income of $1990 per month. The plan that was noticed out commits $1990 per month for 36 months to the trustee for distribution. At the confirmation hearing the Debtors presented a revised expense part of the budget (Ex A). The monthly expenses on Ex A are $5598.91 (say $6m), leaving disposable income of $1285/month, a significant percentage decrease from the first budget and plan. (The original budget included income and expenses for a rental property that has since been given up, and Ms. Rigg will no longer be working as a substitute teacher for APS.)

The Debtors argue that this is a good faith plan – and in particular a good faith budget scaled down from what the debtors were spending prepetition – that ought to be approved because it represents the Debtors' reasonably best efforts to cut back on their expenses in order to pay a dividend to creditors while at the same time allowing them to spend a reasonable amount on the necessities and some smaller amounts on non necessities. They argue among other things that the rent they pay is relatively low, they only drive one car (a van which they have used the chapter 13 case to write down and pay for over time), and they have no specific budget item for the children's birthdays and Xmas. The trustee argues that the Debtors should not be allowed to present one budget at the beginning of the case and then another when it comes to confirmation. The Trustee also argues that the expense part of the budget is simply too "fat" (my term). And the trustee points out that more than 80% of the unsecured debt is nondischargable student loan debt, so that the Debtors are doing themselves a big favor by paying off as much of that debt as they can, unlike dischargeable unsecured debt.

What this case calls on me to do is in essence determine what

Case 05-10673-s13    Doc 36    Filed 09/02/05    Entered 09/02/05 16:03:00 Page 3 of 7

is a reasonable budget in these circumstances.  But first I
need to address the Trustee's reasonable concern about a "more
accurate" expense budget being presented at the trial on
confirmation than appears in the original schedules.

First, and more important for other cases, I don't find that
it is bad faith or a reason to refuse confirmation merely
because the Debtors' numbers are refined or even corrected for
purposes of a hearing.  No doubt the Debtors have an
obligation to be accurate the first time and every time in
schedules, SOFA, exhibits, testimony, etc.  Wholesale changes
to a budget, or schedules, SOFA, etc., may suggest, without
further explanation, that the debtors and/or their counsel are
not being completely honest or careful enough.  However, I
also think there is a rule of materiality, so that a small
mistake unintentionally made should not be a problem.

More important, there is a rule of practicality.  When the
debtors and their counsel are first preparing schedules and
SOFA, they need make only reasonable efforts at being
accurate.  To require debtors and counsel to ensure accuracy
down to the last penny or teacup would impose a burden so
exacting that filing would be virtually impractical.  A test
of "the last penny and last teacup" is not of course what the
trustee is arguing for.  She is merely arguing that debtors
and counsel should get it right the first time.  And they
should.  But requiring something close to perfection also
requires so much work that a filing becomes economically
impossible.  Pointing out that debtors and counsel have some
leeway for reasonable (and unintentional) error illustrates
that often errors will not make any difference whatever in the
administration of the estate, the return (if any) to
creditors, and the integrity of the judicial process.  If the
debtors were lying to begin with, that should be dealt with
for what it is – lying under oath.  If the debtors were not
lying but made mistakes that materially misled the trustee or
creditors, that problem should also be dealt with in a way
that tailors the solution to the problem, which could include
not allowing amendments.  If the debtors were not lying (or
being reckless with the truth) and if no prejudice results
from the misstatement of numbers, and if the figures are
material to what is going on in the case, then the figures
need to be fixed and everyone move forward.

In addition, the fact of the matter is that not everything can
be can be anticipated at the beginning of a case; it is often

Case 05-10673-s13    Doc 36    Filed 09/02/05    Entered 09/02/05 16:03:00 Page 4 of 7

only in hindsight that parties need to focus on specific figures and facts.  If it turns out that a specific set of numbers becomes the focus of litigation and further examination of the numbers shows an error, then the figures need to be corrected and the corrected figures made available to the other parties (and filed) as soon as reasonably possible.  However, and this is important, letting the trustee (or any other party) know only during the hearing that there is a different expense schedule might easily prejudice the other side, and in cases other than this one could easily serve as a basis for not allowing the revised expense schedule to be used at the hearing due to surprise.  In turn, of course, that could lead to nonconfirmation of the plan, and possible conversion or dismissal.

Second, I accept that Ms. Rigg made an honest mistake in calculating expenses based on a biweekly purchase schedule (due to Mr. Rigg getting paid on a biweekly basis) rather than monthly.  And I also accept that Ms. Rigg was acting sufficiently carefully at the outset in trying to figure out what her budget was when the schedules were filed originally, and that no one in this particular case is significantly prejudiced by the use of Ex A (the so-called "sharp pencil budget") to set out the Debtors' expenses.  (In this instance, the Trustee graciously did not object to the admission of the exhibit; had she done so, it is entirely possible that Ex A would never have made it into the record.  And I also would probably have precluded Ms. Rigg from testifying to the contents of the exhibit as well.)

So, on to the merits.  To begin with, there is nothing in the Code that I can see that says the Debtors should not be able to use chapter 13 if most of their debt is nondischargeable. The holders of dischargeable claims will certainly benefit by receiving at least partial payment on their claims.  So will the holders of the nondischargeable claims.  And in fact 11 USC Section 1322(b)(1) precludes discriminating unfairly against a class of unsecured claims.  So that objection is overruled.

As to the budget, most of the expenses for items such as rent (itself fairly inexpensive for a family this size), utilities, etc. are based on actual 12-month averages and are reasonable. And having only one used van looks, in this society, almost abstemious.  On the other hand, I am allowing some expenses to stay in the budget only if the Debtors extend their plan

beyond 36 months to pay the creditors amounts equal to those expenses.  The expenses that need to be trimmed or eliminated in a 36-month plan, or are allowed only if the Debtors make up those amounts to the creditors by more plan payments, are as follows (figures are annual amounts):

Clothing – $5m reduced to $3.5m: Ms. Rigg conceded that they had already in effect reduced the school year $1200 figure by not buying each child the full complement of 5 pants and 7 shirts for the school year, and there is certainly no need to purchase the same number of items for summer.  Further, five pairs of shoes per child seems a bit excessive, even taking into account such things as dance shoes or soccer boots.  On the other hand, Mr. or Ms. Rigg may well find the need to purchase more than $300 each for clothing in the entire year.

Medical and dental – $8560 to $7360: Orthodontics is often an optional albeit quite desirable benefit for a person; however, in the absence of testimony that the two children have such severe palate or other problems that the lack of orthodontics will leave them in a very bad way, orthodontia must be considered a luxury.  The budget is therefore reduced by $1200.  The remainder of the expenses are all allowed; in a sense, chapter 13 requires me to "take the debtors as they are", so that, for example, Mr. Rigg's oddly shaped eye justifies the $520/year for special contacts.  And the copays and deductibles for the health and dental care, and the amounts spent on medications, are also allowed, by the same token.

Combined recreation and children's sports – $6192 to $3792: Taken alone and in isolation, both these numbers are reasonable.  And children's sports and family activities are quite important.  However, in looking over the entire budget, contributing the additional $200 per month to payment of creditor claims (especially when more than 80% of the extra payments are benefitting the Debtors because they go to reduce nondischargeable debt) is also reasonable.  By and large, this is a relatively large overall expense budget, especially in this state, which is a pretty poor state in comparison with the rest of the country.  And the expense budget is probably an illustration of the "principle of too much" as first enunciated by the Tenth Circuit in <u>United States v. Dolese</u>, 605 F.2d 1146, 1154 (10th Cir. 1979).  The Debtors can also find supplemental funds for these activities by squeezing other categories a bit.  And of course Debtors

Case 05-10673-s13    Doc 36    Filed 09/02/05    Entered 09/02/05 16:03:00 Page 6 of 7

>    are also free to make the decision to fund these
>    activities at their own expense by extending the plan
>    payments.

Thus, the yearly budget needs to be reduced by the sum of
$5100 (1500 + 1200 + 2400), or $425/month, and the payment to
the trustee increased by that amount, if Debtors continue to
limit their plan to 36 months of payments.  This means, for a
36-month plan, debtors need now to be paying $1710 to the
Trustee each month, instead of the $1990 originally promised
and the $1285 that Debtors have since proposed.

Debtors are also behind somewhat less than two payments as
measured by the $1990/month.  Debtors need to be current under
the new numbers as ordered today, or deal with any deficiency
by requesting a moratorium, before the next confirmation
hearing.

In addition, given that the creditors will be receiving
materially less than promised originally, the preconfirmation
modification needs to be renoticed to creditors.

RH tdo